[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff seeks a dissolution of marriage, alimony, a distribution of marital assets, counsel fees and other equitable and appropriate relief.
The defendant has filed a cross complaint with a similar prayer for relief.
The parties intermarried in Enfield, Connecticut on June 30, 1973 and both have resided continuously within Connecticut for longer than one year immediately preceding the date of the complaint. Two children were issue of the marriage, now ages twenty-three and twenty-five. There are no minor children. Neither party is receiving governmental welfare assistance.
The marriage between the parties has irretrievably broken down with no reasonable prospect of reconciliation. Accordingly, the marriage is ordered dissolved on the grounds of irretrievable breakdown. CT Page 4632
There are financial and property distribution issues between the parties. The criteria for determination of these issues is found in Connecticut General Statutes § 46b-81 and 46b-82. These criteria are:
1. The length of the marriage:
 The parties were married in 1973, almost twenty-seven years ago. They have been separated since January 1997, when the defendant moved out of the home. He did return for a week or so in February 1997 and for a few days in the latter part of 1997, but realized there was no hope the marriage could continue. This is, then, a relatively long term marriage.
2. The cause of the breakdown:
 The wife ascribes the breakdown to a relationship the husband had with another woman which began in early 1995. On the other hand, the husband testified there were stresses much earlier in time including an abortion the wife had in the late 1970's which he claimed "took the soul out of the marriage". That although he acquiesced it was not his wish to abort the pregnancy. (The plaintiff however, states it was a joint decision). He claims they simply grew apart in the 1980's with arguments over finances, an almost non-existent social life and the wife's mood swings caused by medications she was taking. Through no fault of her own the wife is in very poor physical condition. Since the marriage she has had five operations to her jaw (TMJ). In an early surgery, Teflon implants were used to keep her jaw in place. The Teflon later disintegrated into her body and she has experienced increasingly frequent and severe migraine headaches, to the point where she simply cannot function. She has been treated with a myriad of drugs, and multiple referrals to pain treatment centers. Her extreme and chronic physical pain led to depression and lack of sleep among other things. The husband found it difficult to cope with her poor health, grew distant and the marriage floundered. He admittedly was not cut out to be a care giver and appears to have become resentful that his wife needed an inordinate amount of attention. He resents her for not trying to help herself. Under these circumstances, when the opportunity to find a happier relationship arose, he CT Page 4633 decided to leave his wife. While this brief summary may explain why he felt trapped in an unhappy or even, in his view, an intolerable situation, his wife's condition is not caused by any fault of hers. He left the marriage by choice and is primarily responsible for its breakdown.
 3. The age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each party, and the opportunity of each for future acquisition of assets and income, and the contribution of each in the value of their respective estates:
 The plaintiff wife is forty-six years of age and the defendant husband is forty-eight. (They married at nineteen and twenty-one respectively). Both were ambitious. She, even with young children, earned a B.S., in Math, a Master's degree in education and earned her Sixth Year Certificate in 1989. Her last employment was as a math teacher at Windham Tech from 1986 to December 1996, when she left on disability. Her physical condition had progressively deteriorated. There were days when she could not continue teaching, and someone had to take over her classes. Frequently other staff member had to drive her home (leaving her car at school). By the end of 1996, she simply could no longer function as a teacher although she tried as long as she could. As of January 1997, she has been collecting disability pay of $175.00 weekly. The Court has omitted many details and symptoms from which she suffers, but suffice it to say she is unable to work at any job at this time, nor is it likely she will be able to work in the future based on medical testimony at the trial.
 The husband has been with the State Police (Department of Public Safety) from the mid 1970's. He has worked his way through the ranks to his present position of Major. His gross pay is approximately $1553 weekly and his weekly net pay is $1350.
 His health is generally good, but he does take medication to control hypertension and cholesterol.
 The parties jointly own the marital home in West Willington. In 1975-1976, they purchased the land and built the home using marital savings. The husband did a fair amount of work in finishing the interior. It has a present fair CT Page 4634 market value of $170,000 subject to a home equity loan of approximately $54,000. By stipulation, the present value of the wife's State of Connecticut Teacher's Retirement Pension is $42,000. The present value of the husband's Connecticut State Police pension is $1,089,000. A contingent annuitant election will not change the present value of the defendant's pension.
We turn now to a consideration of the distribution of assets and award of alimony. Other factual findings will be discussed as they relate to the orders being entered.
Alimony:
The wife's disability payments are presently $175.00 per week. She is eligible to receive disability until she turns sixty (February 2014). At age sixty she will receive retirement benefits calculated to be approximately $423 per week. Her disability award provides for cost of living adjustments which have been averaging approximately 3% per annum. The husband has been paying $625 per week pendente lite plus paying her medical insurance, automobile and life insurance. It is estimated that her health insurance alone will cost $60 per week under COBRA provisions after the dissolution. Although there are some economies by which the wife can reduce some weekly expenses, the same is probably true for the husband.
Alimony is necessary for the plaintiff's support probably until she reaches retirement age, given her physical condition.
The defendant shall pay alimony in the amount of $700 per week through January 2014, subject however to the following conditions: If the wife dies, remarries or cohabits as defined by Connecticut General Statutes § 46b-86 (b), the husband's alimony obligation shall cease.
If the wife begins to receive the benefits set out herein under "Retirement Accounts" as a contingent annuitant, or on February 1, 2014, whichever occurs sooner, the alimony award shall be reduced to $1.00 per year.
It is the intent of these orders that the following events would be a significant change in circumstances which would allow consideration of a modification of alimony: CT Page 4635
1. The wife's retirement.
2. The husband's retirement and the benefits which accrue to the wife at the time. (These are not intended to preclude other circumstances which also significantly change.)
Automobiles:
The wife shall retain the 1997 Pontiac and the husband shall retain the 1984 Nissan truck, and each party shall complete any paperwork necessary to effectuate the transfer of title. The husband shall remove the truck from the marital home within 30 days.
Bank Account:
The wife shall retain her account with the Savings Bank of Tolland and the husband shall retain his accounts with the police credit union.
Retirement Accounts:
The wife shall retain her 403(B) funds ($10,000) and her teacher's retirement pension ($42,000). The husband shall retain his Aetna deferred compensation ($41,300).
The wife shall receive fifty percent (50%) of the husband's interest in his State of Connecticut Defined Benefit Pension Plan, as valued on the date of dissolution, by way of a Qualified Domestic Relations Order (QDRO).
The Court orders the husband to elect the fifty percent (50%) contingent annuitant option, naming the plaintiff wife as the sole optionee/beneficiary when he elects to receive said benefits, to protect the wife's interests in the event of his death. In connection with these orders, it is noted that a personnel officer from the Department of Public Safety, Marguarite Breckel, testified that if the husband remarries, and has been remarried for at least one year prior to the commencement of his retirement benefits, the new spouse may have to give written consent if she is not herself named as a contingent annuitant. Although Ms. Breckel was not certain of that requirement, plaintiff's exhibit 9 indicates that to be so, thus it appears that the plaintiff's interest in the pension fund can be defeated if the defendant remarries at least one year CT Page 4636 prior to his retirement and fails to obtain his new spouse's waiver as required by the plan.
Life Insurance:
Each party shall retain the cash value of their respective life insurance policies. However, the husband shall maintain his Mass. Mutual and his employment related life insurance for the benefit of the wife and he shall name her as irrevocable beneficiary on said policies until his alimony obligation to the wife terminates. He shall provide proof of compliance annually upon request.
Medical Insurance:
The husband shall make provisions for the wife's medical insurance as permitted by COBRA, however the wife shall be responsible for the cost of said insurance.
Liabilities:
Each party shall be responsible for the liabilities listed on their financial affidavits (except for attorney's fees).
Attorney's fees:
The husband shall pay $5000 toward the wife's counsel fees within 30 days.
Personal Property:
The defendant has asked that the items of personal property listed on Exhibit A, attached hereto, be given to him. Upon consideration of the parties' request, all of the items on Exhibit A are to be returned to the husband, with the following exceptions:
 Item 5 If found after diligent search, defendant shall have this item.
 Item 9 Gold heavy link bracelet — The plaintiff shall conduct a diligent search for this item. (She states the defendant has taken it). If found the defendant shall have this item. CT Page 4637
Item 10 Box of metal soldiers — Same as Item 9.
Item 19 Plaintiff shall retain this item.
 Item 22 Defendant may have glasses only. The ladle has been given to their daughter.
 Item 44 Bar lamp — shall remain with the plaintiff Copies of children's photos: defendant shall arrange for copies to be made at his expense.
Item 45 If in cedar chest — to be returned to defendant.
The defendant's request to conduct a search of the house for items he may have overlooked is denied as being overly disruptive and intrusive.
Debts:
Unless otherwise ordered herein, each party shall be responsible for the debts shown on their respective financial affidavits.
Miscellaneous Considerations:
It is noted that, while the plaintiff will be responsible to repay the home equity loan, approximately $10,000 of that loan was used to pay for the wedding of their daughter; $10,000 was a loan from the husband to his brothers, approximately $20,000 was to purchase the wife's automobile and $4,000 for the wife's legal retainer. Approximately $10,000 was used to remodel the home.
With respect to life insurance, there was insufficient evidence to show the husband could afford life insurance beyond what he has at this time. In fact, there is a good possibility he is uninsurable because of his hypertension.
Klaczak, J. CT Page 4638